IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER NILES,<br>    Plaintiff, | )<br>)<br>) |
| vs. | )   C.A. No. 1:24-CV-0045<br>) |
| BT ERIE HOTEL LP,<br>    Defendant. | )   Re: ECF No. 13, 18<br>) |

## OPINION

U.S. D.J. Susan Paradise Baxter

    Pending before this Court are the Defendant's Motion to Dismiss the First Amended Complaint and Motion to Dismiss the Second Amended Complaint. ECF No. 13, 18. For the reasons stated herein, the motions will be denied.

### I.    Factual Background

    Plaintiff, Christopher Niles, brought this suit under the Americans with Disabilities Act (ADA), alleging that Defendant's hotel violates the ADA by failing to provide wheelchair accessible beds, and by not providing adequate descriptive information to customers regarding the accessibility of its beds. In his Second Amended Complaint[1], Plaintiff explains that he is paralyzed below his sternum and relies upon a standard-sized wheelchair for mobility. ECF No. 16 at 1. He frequently visits Erie for recreational purposes. During these visits, he has patronized the casino in Erie, fished on Lake Erie, patronized the waterfront restaurants, kayaked, and visited the accessible beach at Presque Isle State Park. *Id.* at 3. He occasionally stays overnight

---

[1] The Second Amended Complaint is the operative complaint. ECF No. 16. Due to the filing of the Second Amended Complaint, the motion to dismiss the first amended complaint will be denied as moot.

1

in a hotel during these visits. *Id.* Plaintiff alleges that he plans to stay overnight at the Subject Property in the future. *Id.* at 28.

In February of 2024, Plaintiff contacted the Defendant's hotel— "which is ideally located for Plaintiff's purposes"—to inquire about the height of the accessible beds. *Id.* at 5, 17. He was informed that the top surface of the beds in the accessible rooms was 28 inches above the floor. *Id.* at 17. Plaintiff alleges that this height makes it difficult, if not impossible, for him to safely transfer from his wheelchair to the bed. *Id.* at 18.

Plaintiff claims to have been injured and he seeks a permanent injunction requiring Defendant to take all necessary steps to bring its beds and sleeping surfaces at the Subject Property into compliance with the ADA. He also requests that the Defendant be required to accurately describe the heights of the beds to prospective guests in its reservation system. *Id.* at 29. In response to the Second Amended Complaint, Defendant has moved to dismiss due to lack of subject matter jurisdiction, and alternatively for mootness. ECF No. 18. Plaintiff opposes the motion. ECF No. 20. The primary issue before the Court is whether Plaintiff has adequately plead an injury in fact in order to support standing to sue.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move to dismiss a plaintiff's complaint for lack of subject matter jurisdiction. A challenge to standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Under Rule 12(b)(1), the Court "must accept as true all material allegations set forth in the complaint and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir.

2003) (internal citations omitted). The party that invokes federal jurisdiction must establish the elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### III. Article III Standing

Defendant moves to dismiss the Second Amended Complaint due to lack of standing. "Article III of the Constitution limits [the] federal 'judicial Power' to the adjudication of cases or controversies." *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (citing U.S. Const. art. III, § 2). Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In evaluating whether the plaintiff has standing, the Third Circuit outlined that the plaintiff must establish (1) they have suffered an injury in fact, (2) that injury is fairly traceable to the defendant's challenged conduct, and (3) that injury is redressable by the court. *Storino*, 322 F.3d at 296.

Defendant acknowledges that the second and third factors of the test are satisfied, as the beds in its hotel are owned by Defendant and are allegedly responsible for Plaintiff's claimed injury. ECF No. 17 at 5. Additionally, an injunction requiring lower beds would likely remedy the alleged injury. *Id.* So then, the question before the Court is whether the Plaintiff has suffered an injury in fact.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. 330, 339 (2016) (quoting *Lujan,* 504 U.S. at 560). Where a plaintiff seeks injunctive relief "he [must] allege facts giving rise to an inference that he will suffer future discrimination by the defendant." *Mullen v. DSW Inns, LLC*, 2024 WL 1095718, at *3 (W.D. Pa. Mar. 13, 2024) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288

F.3d 548, 561 (3d Cir. 2002)). Courts have implemented even more precise standards—the intent to return, deterrent effect, and tester standards—to determine whether the plaintiffs in Title III ADA cases have suffered a legal injury. *See Mullen v. Ashirward Hosp., LLC*, 2024 WL 936322, at *2 (W.D. Pa. Mar. 5, 2024) ("*Ashirward I*"). A court may find standing if a plaintiff satisfies any one of these standards. *See Ashirward,* 2024 WL 4343143, at *6 n.5 (W.D. Pa. Sept. 30, 2024) ("*Ashiward II*") (noting that because the plaintiff established standing on other grounds, the Court need not address the issue of tester standing).

### A. The Intent to Return Test

In ADA cases where disabled plaintiffs bring suit seeking an injunction mandating the removal of architectural barriers, district courts within this Circuit generally look to the following four factors to determine whether the plaintiff has alleged a threat of injury that is concrete and particularized: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel. *Dempsey v. Pistol Pete's Beef N Beer, LLC*, 2009 WL 3584597, at *4 (D.N.J. Oct. 26, 2009) (internal citations omitted); *Ashirward II,* 2024 WL 4343143, at *5 (citing *Mullen v. DSW Inns, LLC*, 2024 WL 1095718, at *4); *Mahoney v. Waldameer Park, Inc.*, 2021 WL 1193240, at *4 (E.D. Pa. Mar. 30, 2021)(discussing two formulations for the intent to return test, and relying on the four part test for analysis).

A plaintiff need not satisfy all four factors to show a concrete and particularized threat of injury. *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 539 (W.D. Pa. 2013). The third factor

however, is "of great importance...." *Id.* at 540. *See also, Ashirward II*, 2024 WL 4343143, at *6 (considering all four factors together but giving particular weight to the third factor).[2]

The first factor of the test, which evaluates a plaintiff's proximity to a defendant's place of public accommodation, weighs in favor of Plaintiff. Here, Plaintiff alleges that he resides in Lawrence County, Pennsylvania which is approximately 1.5 hours away from the Subject Property. ECF No. 16 at 33. It is plausible that Plaintiff would go on a multi-day trip to the Erie area and stay overnight.

The second factor, past patronage, is neutral and weighs neither in favor of nor against standing. Plaintiff does not assert that he has ever visited the Subject Property. This Court finds, however, that because the hotel is ideally located for Plaintiff's purported recreational purposes and the core of this action is Plaintiff's inquiry about the bed height—coupled with his inability to stay at the Subject Property due to its lack of accessibility—past patronage is not determinative. *See Harty v. Burlington Coat Factory of Pennsylvania, L.L.C.*, 2011 WL 2415169, at *7 (E.D. Pa. June 16, 2011)(finding that plaintiff's one-time visit satisfied the past patronage factor at the pleading stage, but also discussing that plaintiff need not engage in futile gestures of appearance. The Court stated that it is "sufficient for a plaintiff to allege that he has actual knowledge of architectural barriers and that but for noncompliance with ADA provisions, he would avail himself of the defendant's goods and services.") (quoting *Disabled Patriots of Am., Inc. v. City of Trenton*, 2008 WL 4416459, at *1 (D.N.J. Sept. 24, 2008)).

The third factor, the definitiveness of plaintiff's plan to return, weighs in favor of standing. In support of its motion to dismiss, Defendant relies on *Ashirward I*, 2024 WL 936322, (W.D. Pa. Mar. 5, 2024). There, the plaintiff only alleged a "sparse and formulaic" "desire" to

---

[2] It remains unclear whether the Third Circuit recognizes the deterrent effect test, the intent to return test or both. District courts in this Circuit have analyzed standing applying both. *Mahoney*, 2021 WL 1193240, at *6.

stay at the subject hotel for a "relaxing and restorative visit." *Id.* at 3. The court found that the plaintiff failed to explain when, why, or demonstrate, the inevitability of an overnight stay or describe whether the trip would be a one-off or a recurring event. *Id.*

The instant action more closely resembles *Ashirward II*, 2024 WL 4343143, where the court found that the plaintiff sufficiently alleged an injury in fact applying the same test. In *Ashirward II*, the plaintiff alleged that the subject property was ideally located for the plaintiff's purposes; plaintiff visited the area in the past; and plaintiff loosely alleged an itinerary of activities he sought to enjoy while traveling to the area including a desire to stay at the subject property. *Id.* at 3. Here, Plaintiff alleges that the subject hotel is ideally located for his recreational purposes; he is a long-time, frequent visitor to the Erie area; he plans to fish, kayak, visit the casino, patronize waterfront restaurants, and enjoy the accessible beach at Presque Isle State Park; and he alleges that he desires to stay at the subject property. ECF No. 16 at 3,4.

Furthermore, Plaintiff alleges that he contacted the hotel in February of 2024 and inquired about its accessibility presumably for the purpose of patronizing the hotel for his summer and fall of 2024 planned trips. Although Plaintiff does not identify specific dates for his travel, the court in *Ashirward II* noted that "[w]hile details such as specific dates are helpful for the Court to determine whether Plaintiff will actually travel, they are not necessary, so long as Plaintiff pleads sufficient facts, which if true, would support a plausible inference that the travel (and therefore the discrimination) will occur." *Ashirward II,* 2024 WL 4343143 at n.2.

Accepting all factual allegations in the complaint as true and construing those facts in favor of Plaintiff, he has alleged sufficient facts that support a plausible inference that the travel will occur. The test is definitiveness, not specificity.

6

The fourth factor, frequency of nearby travel, weighs in favor of standing. Plaintiff alleges that he frequently visits the general Erie area to engage in recreational activities and to patronize nearby amenities.

Taking into account all four factors of the Intent to Return test, with particular emphasis on the third factor, the Court finds that Plaintiff has adequately alleged an injury in fact sufficient to establish standing.

### B. The Deterrent Effect Test

Alternatively, when a court applies the deterrent effect test, "a plaintiff is considered to have suffered an actual injury when he or she is deterred from patronizing a public accommodation because of accessibility barriers." *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 640 (E.D. Pa. 2016). A plaintiff must allege that he or she has actual knowledge of barriers preventing equal access and a reasonable likelihood that the plaintiff would use the facility if not for the barriers. *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 229 (D.N.J.2003)(holding that "deterrence from visiting a place of public accommodation known to be out-of-compliance with the ADA can constitute an actual and present injury as surely as tomorrow's visit to the same location can constitute a threatened and imminent one."). "While the theory of injury is different, the end point of the Court's inquiry under either the intent-to-return or deterrent-effect framework is the same: a determination of whether the plaintiff pled sufficient facts giving rise to a plausible inference that they will suffer future discrimination by the defendant." *Ashirward II*, 2024 WL 4343143, at *2 (citing *Pryor*, 288 F.3d at 561).[3]

---

[3] While "tester" jurisdiction has been raised in Plaintiff's complaint, this Court will not analyze tester standing, because jurisdiction has been found on other grounds. Whether testers who allege claims under Title III of the ADA have standing has not been directly addressed by the Third Circuit, but other courts in this District have held that ADA testers have standing. *See Ashirward I*, 2024 WL 936322, at *7; *Mahoney*, 2021 WL 1193240, at *7. *But see*,

As discussed previously, Plaintiff has alleged plans that sufficiently show a reasonable likelihood he would visit the Erie area. Defendant's hotel is ideally located for Plaintiff's purposes, and it is likely that Plaintiff would have used the Subject Property but for the height of the beds. Plaintiff states that "[he] would like to stay at the subject property during his visits to Erie this summer and fall with the ability to safely and independently use the hotel's sleeping beds." ECF. No. 16 at 24. Furthermore, Plaintiff gained actual knowledge of the barriers obstructing his ability to patronize the Subject Property when he inquired about the bed height in February of 2024. In light of the above, the Court concludes that Plaintiff has sufficiently alleged an injury in fact under the deterrent effect test.

### IV. Mootness

Defendant alternatively moves to dismiss based on mootness. Defendant argues that the case has become moot because it has "remediated the alleged conduct of having beds that are allegedly too high," the alleged wrongful behavior cannot be reasonably be expected to recur.

The standard for "determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *United States v. Gov't of Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004)(quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968))(internal citations omitted.). The burden is high, and the reason for it is that "[t]he Constitution deals with substance," not strategies. *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Cummings v. Missouri*, 71 U.S. 277, 325 (1867)). Were the rule more forgiving, a

---

*Acheson Hotels, LLC v. Laufer*, 601 U.S. 1 (2023)(Thomas J. concurring)(cautioning courts against private proactive enforcement of the ADA which is properly reserved to the executive branch).

defendant might suspend its challenged conduct after being sued, win dismissal, and later "pick up where it left off, repeating this cycle...." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Although Defendant argues that the beds have been "remediated," it does not state that the beds are now ADA-compliant, only that they are lower than they were. Even if the new beds are compliant, it is plausible that the beds could revert to the previous height of 28 inches in the future without an injunction. Furthermore, Plaintiff seeks relief beyond ADA-compliant beds. In light of these considerations, the Court finds that this case is not moot.

## V. Conclusion

For the aforementioned reasons, both Defendant's motions to dismiss will be denied. An appropriate Order follows this Memorandum Opinion.